UNITED SHIRT & COLLAR CO. et al. v. BEATTIE et al.

(Circuit Court, N. D. of New York. June 10, 1905.)

No. 6,954.

PATENTS—INVENTION AND INFRINGEMENT—FOLDING MACHINE.
    The Pine patent, No. 645,871, for a folding machine designed and used
for folding the edges of collars, cuffs, and like articles, was not antici-
pated in the prior art, and covers a true combination, which discloses
novelty and patentable invention. Also *held* infringed.

In Equity.

Suit in equity for alleged infringement of United States letters patent No.
645,871, dated March 20, 1900, application filed October 3, 1894, granted to
United Shirt & Collar Company of Troy, N. Y., assignee of James K. P. Pine,
for a "folding machine." The machine is used for the folding or inturning
of the edges of collars, cuffs, and like articles, particularly in the manufacture
of shirts, collars, and cuffs. The complainant Reece Folding Machine Com-
pany is the sole and exclusive licensee under said patent of the United Shirt
& Collar Company. The defendants are extensive manufacturers of folding
machines. The suit was commenced October 14, 1902. The defenses relied
on are anticipation, lack of novelty and invention, that the patentee is not
the sole inventor, and noninfringement.

Edwin H. Brown, for complainants.
George A. Mosher, for defendants.

RAY, District Judge (after stating the facts as above). There
are six claims in the patent in suit. Each claim embraces or in-
cludes the following features: A support or bed for the blanks of
collars, cuffs, or other articles to be folded. A blank is the material
cut into shape for folding. A templet, or die, or former, or presser,
having expanding and contracting plates with edge portions adapt-
ed to bear directly upon the blanks while resting upon the support
or bed. When the folding is to be done, this templet, die, former,
or presser is lowered upon the blank which rests upon the bed,
and, after being so lowered, is raised to a position some little dis-
tance above the bed, where it remains for use in another operation.
The plates or blades of the templet are expansible and contractible
with reference to a common center, and expand and contract in or
below the plane of a body piece or stock to which they are attached.
When this templet, die, former, or presser is in use, its blades or
plates are expanded, and their edge dimensions then approximate
to, but are less than, the outline or outer edge of the blanks them-
selves. This is so that the edge portions of the blanks may be
turned up and inwardly and folded over the edges of the plates or
blades; and thus on each machine each blank, if the plates, etc.,
are not changed, is made of the same size and corresponds in size
and shape to the collar, cuff, or other article to be manufactured
from the blank. When the blades are contracted, the folded edges
of the blank are freed from the templet, die, former, or presser.
Also infolders or folders, as they are called. These folders are
mounted upon the bed in such a manner that they may be moved
toward and from each other. They are constructed in such a man-

ner that when the blades of the templet or presser bear upon the blanks to be folded the edges of the blanks by the inward movement of the infolders may be turned or folded over the edges of the plates or blades, and thus retained in the folded condition.    In the structure there is such a combination of the templet, plates, and infolders that, after the infolders have been moved toward each other and toward their inward position, thereby folding or turning over the edges of the blanks, the templet, plates, or blades may be contracted so as to free them from the folded edges of the blanks and from the infolders.    Then the templet blades and templet may be raised to the position occupied by them when out of use.    There is also a combination of the bed and infolders, whereby a blank lying between the two may be pressed.    This may be done by a relative vertical movement of these parts toward each other.    This may be done by either a rising movement of the bed, or a downward movement of the infolders, or by a movement of both toward each other.    These parts and combinations made according to the patent in question form a machine which will fold and press the folds in a blank designed to be made into a collar, a cuff, or some analogous article.    One object is to fix in position by pressure the edges of the blank after being folded over, and this pressing is done between the support or bed and the infolders.

It is not regarded as necessary here to point out the differences in the scope of the different claims of the patent.    I find and hold, under all the evidence in the case, that the patentee, Pine, assignor to the complainant United Shirt & Collar Company was the sole inventor of the patent in suit, and I also find that there is no lack of novelty or of invention if it be true that anticipation is not shown. In short, I come, in the consideration of this case, to the question, in the patent in suit is invention disclosed in view of the prior art? It is contended that the patent in suit was anticipated by certain patents to which attention will be directed.    The question is mainly one of fact, and will not require extensive discussion, as it would not be profitable to indulge therein.    Should I attempt to discuss all the evidence in the case bearing upon this question, no particular light would be thrown upon the question at issue.    It is evident that the patent in suit, as finally granted, had a long, hard road to travel, as is disclosed by the proceedings in the Patent Office and the length of time that elapsed between the filing of the application and the granting of the patent.    The patent is presumed to be valid, and to my mind this presumption is strengthened by the consideration given the case in the Patent Office before the patent was granted.    Prior use must be proved beyond a reasonable doubt. A preponderance of evidence will not suffice.    There is in this case considerable evidence of prior use, but its character is such, all things considered, that I cannot say the defense is established.

The United States letters patent to George Boxley for "improvement in machines for folding blanks for collars and cuffs," No. 199,615, dated January 29, 1878, and for "plaiting machine," No. 263,014, dated August 22, 1882, and United States letters patent to Rumrell for "machine for making book covers," No. 64,038, dated

April 23, 1867, also patent for "hat rounding machine," to Wenstrom, of May 13, 1884, No. 298,643, and patent to Jackson, October 10, 1893, No. 506,402, "machine for making book covers," and several others, have been carefully examined. I fail to find in these the following element found in the patent in suit, viz. (claim 1): "And means whereby the folds of the blanks may be pressed between the support (bed) and the infolders after withdrawal of the plates of the templet (die, former or presser) from the folds, and thereby fixed with a sharp fold"; (claim 2) "and means for producing a relative vertical movement between the bed and the infolders sufficient to produce a sharp fold in the blanks after withdrawal of the plates of the templet from beneath the infolders"; (claim 3) "and means whereby the infolds thereby formed may be pressed between the infolders and the bed after the templet plates are withdrawn therefrom, and before the infolders have been moved outwardly, substantially as shown and described"; (claim 4) "and means for forcing the bed against the infolders after the templets are withdrawn, whereby by operating the several elements as and in the order specified a cuff or collar may be infolded on all sides at one operation and the infold fixed therein with a sharp fold by pressure after the templet plates have been withdrawn from the infolds, substantially as and for the purpose specified."

In the brief of the complainants I find this statement referring to the Boxley machine of 1878:

"There is no good reason for doubting that Boxley, with the aid of persons employed in the machine shop of William H. Tolhurst, made some kind of a machine comprising a stationary bed, a templet capable of being raised and lowered relatively to said bed and provided with two expanding and contracting plates or blades arranged at opposite ends of a body or stock, and two infolders arranged to slide upon the bed towards and from each other. Undoubtedly in that machine a blank could be held upon the bed by the edges of its templet plates or blades, while the infolders were moved towards each other to turn or fold over the edges of the blank; and the folded blank could undoubtedly be left unengaged upon the bed so that it could be picked off the bed if the plates or blades of the templet were contracted and the infolders moved to their extreme outward positions."

It is necessary to understand that the templet, or die, or former, or presser is not the means used, in complainants' patent at least, for pressing the folded edges of the collars or cuffs. This templet or presser in all the devices comes down and presses or holds the blank on the support or bed while the infolders turn the edges of the blank over the edges of the blades of the templet, and it is after this is done, and after the blades of the templet or presser are contracted and withdrawn from the folded edge of the blank and raised, that the pressing of these folded edges of the blank is done, not by the templet, but by the pressure of the blades of the infolder on the bed, which pressure may be caused by raising the bed against the infolders or by the downward movement of the infolders or by the movement of both towards each other. Claim 1 says nothing as to this movement of the bed, etc.—whether vertical or otherwise. Claim 2 makes this movement a relative vertical one, while claim 3 is not limited to a vertical movement. I cannot see that this is

a material consideration, however, in considering the Boxley patent of 1878. It is conceded by the defendants that this Boxley patent does not show or refer to the operation of pressing the fold of the blank between the "support" or "bed" and the infolder after the templet has been withdrawn. If this patent did show this, I should, I think, be compelled to hold that anticipation has been definitely shown. But the defendants assert that, while the patent of Boxley does not show this operation, either in claims or specifications, the Boxley machine, in evidence and before the court, does show it, and that the proof is satisfactory, and in fact conclusive, that this Boxley machine for a long time—years—prior to the issue of the Pine patent in suit was in more than one case publicly used to fold and press the fold between the bed or support and the infolder, and therefore we have complete anticipation and prior public use established. A careful examination and operation of the Boxley machine in evidence, and before the court, discloses that this pressing of the folded edge of the blank after the withdrawal of the die, presser, or templet, between the bed and infolders may be done by this Boxley machine. It is done by withdrawing and raising the templet and then extending the blades of the templet and lowering it upon the blades of the infolders still extended over the folded edge of the blank. This presses the infolders down upon the folded edges of the blank collar or cuff; and as it is between the bed and infolder it is pressed—not exactly in the manner described in complainants' patent, but sufficiently so—it is claimed to show prior use, etc. It is possible that the Boxley patent was used to some extent in this manner, but I am not satisfied it was so used. Clearly, the Boxley machine was never constructed to be used for such a purpose. Used in that way, its usefulness would soon be destroyed. It is not necessary to go into details of evidence showing why I have reached this conclusion. The combination of the patent in suit is not a mere aggregation. It is true that in the Jackson patent of October 10, 1893, No. 506,402, we have:

"My invention relates to machines for performing the operations above indicated, and consists of a vertically reciprocating male former and a female former, provided with horizontally adjustable and vertically movable folding plates; and further of mechanism which operates upon the alternate downward movement of the male former to force the folding plates inward over the female former in position to be struck by the male former and to be forced downward into the female former, and of the devices and combinations of devices hereinafter more specifically set forth and claimed."

And in claim 1:

"In a machine for making book covers, the combination of a vertically reciprocating male former, a female former, a series of guide plates supported in suitable bearings, a series of folding plates connected to and horizontally movable with the guide plates, means for imparting horizontal, parallel motion to the guide and folding plates, and means whereby the folding plates may be moved vertically in relation to the guide plates; all substantially as described."

But it is true of many valid combination patents that each element standing alone has its counterpart somewhere. If we do not find it in one art, we find it in another. Sometimes it is found in an

analogous art, and many times not. But, after all, we come to the questions in the case of a particular patent whether or not in the combination of elements all are old? Has this combination, for this purpose, been made before? If so, was the one made operative or inoperative? Have we a new combination of old elements working in a different manner and producing a new result, or an old result in a substantially better and less costly manner? Is the combination so made up that each element performs its old function in the old way? These and many others are presented for the consideration of the court in determining whether or not we have a patentable invention, and whether or not there was prior use or abandonment to the public, or anticipation. A discussion of these questions with reference to the evidence in this case might be made almost interminable. I am satisfied and hold that complainants' patent in question contains novelty, and discloses invention, within the adjudged cases. Anticipation or prior use are not proved. Infringement is clearly established.

The complainants are entitled to a decree accordingly, and for an accounting.